IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| CORNELIUS WASHINGTON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 09-0258-CV-W-ODS |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## ORDER AND OPINION AFFIRMING COMMISSIONER'S FINAL DECISION DENYING BENEFITS

Pending is Plaintiff's request for review of the final decision of the Commissioner of Social Security denying his application for disabled widower's insurance benefits. The Commissioner's decision is affirmed.

## I. BACKGROUND

Plaintiff is a 61-year-old college graduate with a Veterans Affairs (VA) pension and a history of employment as a janitor, substitute teacher, and a Navy machinist. Defendant determined Plaintiff to be not disabled through April 24, 1993, in a previous Social Security disability proceeding. On June 27, 2003, Plaintiff filed an application for widower's insurance benefits. This application required Plaintiff to establish that he was disabled within 7 years after his deceased spouse's death (May 1, 1991). *See* 20 C.F.R. § 404.335(c)(1). Plaintiff's widower's insurance application required him to show that he was disabled between April 25, 1993, and May 1, 1998. He received all his care through VA.

Plaintiff's application claimed he could not work due to sarcoidosis,[1] diabetes,

---

[1] "Sarcoidosis is an inflammatory disease. It starts as tiny, grain-like lumps called granulomas, which most often appear in your lungs or lymph nodes. They can

strokes, a heart condition, skin problems, and a staph infection. Plaintiff's brief focuses almost exclusively on his sarcoidosis diagnosis. Plaintiff was diagnosed with this disease in 1990. It primarily manifested with recurring skin lesions on Plaintiff's back, neck, nose, and other parts of his body. Plaintiff often was treated with Prednisone.[2] Sometimes Plaintiff's nose lesions would require an intralesional corticosteriod injection before they would improve.

Plaintiff exhibited some lung impairment after his sarcoidosis diagnosis. A pulmonary study from 1993 revealed a significant decrease in lung volumes compared to a study completed in 1992. Plaintiff complained of shortness of breath in 1994 and 1997. Plaintiff was prescribed Albuterol. Doctors nevertheless concluded in 1994 that Plaintiff's pulmonary symptoms did not require steroid treatment. Plaintiff's shortness of breath was assessed as "stable" in 1995, and Plaintiff was directed to continue present medications. Pulmonary staff were consulted during a hospital stay in 1996 and they suggested Plaintiff did not have active lung disease and would not start Prednisone. Plaintiff's request for a handicapped parking permit was denied in 1997 in part because the doctor noted Plaintiff's pulmonary function tests were normal in 1996. On April 8, 1998, Plaintiff denied increased shortness of breath and reported he was "able to do everything he need[ed] to do." Plaintiff also reported "continued abstinence from alcohol." Plaintiff had been drinking three to four pints of rum per day in 1997.

Plaintiff also exhibited some recurring eye problems following his sarcoidosis diagnosis. Plaintiff was diagnosed with conjunctivitis (pink eye) in 1995. Plaintiff was

---

clump together and form larger lumps that attack other organs. Sarcoidosis often affects your skin, eyes or liver." http://www.nlm.nih.gov/medlineplus/sarcoidosis.html (last visited on May 11, 2010).

[2] Prednisone is a corticosteroid. *See* http://www.nlm.nih.gov/medlineplus/druginfo/meds/a601102.html (last visited May 14, 2010). "Corticosteroid medications are considered the first line of treatment for sarcoidosis that requires treatment." Foundation for Sarcoidosis Research, *Sarcoidosis and the Body*, p. 28, http://www.stopsarcoidosis.org/sarcoidosis/FSR_bodybroc.pdf (last visited May 16, 2010).

diagnosed with chronic recurrent uveitis[3] in August 1996. The doctor noted Plaintiff had been asymptomatic but had depleted his medication. Plaintiff had 20/20 vision. In 1997 Plaintiff complained of floaters and eyelid inflammation. A doctor diagnosed uveitis and mild sacroid inflammation in December 1997 that did not require oral steroids. Plaintiff's symptoms improved after 2 weeks of treatment. A progress note from April 1998 found that Plaintiff's disease was well-controlled with topical treatment.

The record contains two VA Rating Decisions. The first is from April 1993. It shows that Plaintiff became entitled to nonservice connected benefits effective for spleenectomy, arthritis in multiple joints, diabetes, hypertension, and left median and ulnar nerve pulsy. The left median and ulnar nerve problem related to a gunshot wound from 1980. The 1993 Rating Decision notably evaluated Plaintiff's sarcoidosis as 0 percent disabling. The second Rating Decision is from 2004. Plaintiff was found to have service connected disabilities for various conditions relating to his diabetes. Plaintiff's sarcoidosis was found to be not service connected and not compensable.

After Plaintiff's widower's insurance application was filed, a Disability Determination Services (DDS) physician completed a residual functional capacity (RFC) assessment based on the medical records from 1991 through 1998. The physician concluded Plaintiff could lift 10 pounds frequently and 20 pounds occasionally, and that he could sit, stand and/or walk for about 6 hours in an 8-hour workday. The physician also concluded Plaintiff was required to avoid concentrated exposure to extreme temperatures, humidity, and fumes, and was required to avoid even moderate exposure to hazards.

A hearing before an administrative law judge (ALJ) was held February 8, 2005. Richard Ward Watts, M.D., testified as a medical expert and was the first witness. Dr. Watts testified Plaintiff had no "constitutional" symptoms of sarcoidosis, *e.g.*, weight

---

[3] "Uveitis is swelling and irritation of the uvea, the middle layer of the eye. The uvea provides most of the blood supply to the retina." *See* http://www.nlm.nih.gov/medlineplus/ency/article/001005.htm (last visited May 14, 2010).

loss, nausea, vomiting, or weakness.  Dr. Watts explained that the most frequent and serious involvement of sarcoidosis was lung impairment, and Plaintiff's sarcoidosis did not manifest itself in this manner.  Dr. Watts concluded Plaintiff was capable of performing medium work.[4]

Plaintiff and a vocational expert (VE) also testified at the hearing.  Plaintiff testified he stopped working because he could not lift things.  When asked if there was anything else he could not do, Plaintiff responded, "No."  Plaintiff did indicate he had trouble with his breathing and that he had sores on his body from sarcoidosis upon questioning by his attorney.  Plaintiff also testified his sarcoidosis made his vision blurry for about 1 week at a time, but could not remember how often that happened.  The VE testified Plaintiff was capable of performing light unskilled work as a packer/operator or machine tender.  The VE reached this conclusion after the ALJ posited a hypothetical worker who could lift and carry 20 pounds maximum, 10 pounds occasionally, and 3 to 5 pounds with more frequency, who was required to have a sit/stand option throughout the workday to avoid breathing problems relating to sarcoidosis, and whose use of his left hand was limited to occasionally holding and grasping things in conjunction with his right upper extremity.  When asked to consider a worker who was limited to more sedentary exertional type work and who could not lift in excess of 10 pounds maximum, the VE testified the person could perform work as a surveillance systems monitor or an information clerk.  The jobs identified by the VE reportedly existed in significant numbers in the local and national economy.

The ALJ denied benefits after concluding Plaintiff's impairments were under "fairly good control during the prescribed period" and after noting that Plaintiff's minimal earnings history showed he was not motivated to work.  The ALJ determined Plaintiff could perform at least some light work and specifically mentioned the jobs identified by the VE.  Plaintiff requested district court review of the ALJ's decision.  On May 23, 2007,

---

[4] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds.  If someone can do medium work, we determine that he or she can also do sedentary and light work."  20 C.F.R. § 404.1567(c).

4

this Court reversed and remanded the case because the ALJ failed to address Plaintiff's receipt of VA benefits (Case No. 06-0506, Doc. 12).

Additional medical records from VA were submitted and a second hearing was held before the ALJ on August 21, 2008. Dr. Joseph Rubini testified as a medical expert. Dr. Rubini stated that Plaintiff's sarcoidosis did not appear very severe as of 1995 and that Plantiff's uveitis would clear after being treated with steroids. Dr. Rubini offered his opinion that Plaintiff could have lifted 20 pounds occasionally and 10 pounds frequently, could have stood 2 hours during a workday with the option to sit when needed, and that he was required to avoid temperature extremes and noxious fumes. Following the hearing the ALJ again denied Plaintiff benefits. With respect to Plaintiff's VA disability ratings, the ALJ discounted the 1993 decision because it was based on evidence prior to the relevant period and because it "conflict[ed] with the medical evidence." The ALJ did not mention the 2004 decision. The ALJ gave "substantial weight" to Dr. Rubini's assessment of Plaintiff's ability to work and concluded Plaintiff was capable of performing the same jobs identified in the previous decision denying benefits.

## II. DISCUSSION

"[R]eview of [the Commissioner's] decision [is limited] to a determination whether the decision is supported by substantial evidence on the record as a whole. Substantial evidence is evidence which reasonable minds would accept as adequate to support the Secretary's conclusion. [The Court] will not reverse a decision simply because some evidence may support the opposite conclusion." *Mitchell v. Shalala*, 25 F.3d 712, 714 (8th Cir. 1994) (citations omitted). Though advantageous to the Commissioner, this standard also requires that the Court consider evidence that fairly detracts from the final decision. *Forsythe v. Sullivan*, 926 F.2d 774, 775 (8th Cir. 1991). Substantial evidence means "more than a mere scintilla" of evidence; rather, it is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Smith v. Schweiker*, 728 F.2d 1158, 1161-62 (8th Cir. 1984).

Plaintiff essentially contends in his main argument that his sarcoidosis was more severe than the ALJ found. Plaintiff supports his argument by citing to what appears to be every medical record he could find from 1992 to 1998 documenting the eye, lung, and skin manifestations of his disease. These records do not establish Plaintiff was disabled. These records establish that Plaintiff's lung function stabilized in 1995 and 1996 and Plaintiff never required steroid treatment for lung impairment. These records also establish that Plaintiff's eye and skin problems were recurrent but also responsive to treatment. Impairments that are amenable to treatment do not support a finding of disability. *Hutton v. Apfel*, 175 F.3d 651, 655 (8th Cir. 1999). Opinions from two testifying physicians were consistent with the ALJ's determination. Substantial evidence supports the ALJ's determination that Plaintiff's sarcoidosis was not disabling.

Plaintiff next argues the ALJ gave insufficient consideration to VA's disability determinations. Plaintiff limits his argument to the 1993 decision. The ALJ was required to consider this assessment but was not bound by it. *See Pelkey v. Barnhart*, 433 F.3d 575, 579 (8th Cir. 2006). This assessment assigned Plaintiff a 0 percent rating for his sarcoidosis. The assessment was also based on medical evidence prior to the relevant period. The 1993 Rating Decision does not prove Plaintiff's sarcoidosis was disabling. The ALJ considered VA's assessment and had good reasons for affording it little weight.

Plaintiff next contends that the hypothetical presented to the VE was insufficient because it failed to include that Plaintiff would need to avoid chemical and dust exposure due to his sarcoidosis. An ALJ's hypothetical must "capture[ ] the concrete consequences of a claimant's deficiencies." *Cox v. Astrue*, 495 F.3d 614, 620-21 (8th Cir. 2007) (citation omitted). The ALJ's hypothetical to the VE did not mention chemicals, dust, or noxious fumes, but did include a sit/stand option to alleviate breathing problems that could arise do to Plaintiff's sarcoidosis. At the first evidentiary hearing Dr. Watts testified Plaintiff could perform medium work without mentioning fumes or dust. The ALJ's hypothetical to the VE captured the concrete consequences of Plaintiff's sarcoidosis. Moreover, Plaintiff notably does not contend that the VE's opinion he was capable of performing work as a surveillance system monitor and

information clerk would have changed if fumes or dust avoidance was mentioned.

Plaintiff lastly argues the ALJ's hypothetical failed to include limitations caused by Plaintiff's eye problems, shortness of breath, fatigue, and arthritic pain. The ALJ was entitled to include in his hypothetical only those impairments found to be substantiated by the record. *See Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2001). Plaintiff maintained at the hearing that his eye problems would have caused him to miss 1 week of work every 2 months and that his fatigue would have required him to rest lying down during the work day. The record does not support these limitations. Plaintiff's shortness of breath was covered by the sit/stand option in the ALJ's hypothetical. Plaintiff's arthritis of his left knee was considered mild in 1995 and he was diagnosed with mild degenerative changes in his shoulder and spine in 1997. Plaintiff was denied a handicapped parking permit because he was ambulatory. Plaintiff testified at the hearing that he could not work due to his inability to lift and breathing problems, not because of arthritis pain. Arthritic pain was not an impairment that needed to be included in the ALJ's hypothetical. Remand is not required.

### III. CONCLUSION

The Commissioner's decision is affirmed.
IT IS SO ORDERED.

/s/ Ortrie D. Smith
ORTRIE D. SMITH, JUDGE
DATE: May 17, 2010       UNITED STATES DISTRICT COURT